## LÓPEZ *v.* VALDESPINO.

### APPEAL from the District Court of San Juan.

No. 34.—Decided April 22, 1904.

MARRIAGE.—The parties to a marriage have a right to choose the judge who performs the marriage ceremony, and it is not necessary that the judge of the domicile of either of the said parties should act in such cases.

ID.—The Civil Code of 1889 does not prohibit Catholics from contracting civil marriage, but merely established two forms of marriage, namely, canonical marriage for Catholics, and civil marriage, which is regulated by the same Code, for all others who may be desirous of entering into the marriage state, whether Catholics or the adherents of other religious sects.

ID.—COERCION.—The fact that a party is compelled to contract marriage in order to avoid certain criminal liability, which may be required of him in case he does not do so, does not constitute the coercion or compulsion prescribed by the Civil Code of 1889 as a cause for the annulment of the marriage.

ID.—ERROR.—The error specified in the Civil Code of 1889 as a ground for the annulment of a marriage relates to an error as to the person which vitiates

mas no á un estado puramente accidental de la persona del otro contrayente.
COSTAS.—Las costas deben imponerse á la parte cuyas pretensiones sean desestimadas en absoluto.

## EXPOSICIÓN DEL CASO.

En el juicio seguido en el Tribunal de Distrito de San Juan sobre nulidad de matrimonio, entre partes, de la una, Adriano T. López Nussa, como demandante, al que ha representado ante esta Corte Suprema el Letrado Don Jacinto Texidor, y de la otra Doña María Luisa Valdespino, como demandada, no habiéndose mostrado parte en este Tribunal, y el Hon. Assistant Attorney General representando á el Pueblo de Puerto Rico como es usual en asuntos de esta índole, por el interés público; cuyo juicio pende ante Nos á virtud de recurso de apelación interpuesto por Adriano T. López Nussa contra la sentencia dictada por el referido Tribunal, que copiada literalmente dice así:

"*Sentencia.*—En la ciudad de San Juan de Puerto Rico, á los catorce días del mes de Marzo de mil novecientos tres.

Visto en juicio oral y público en esta Corte de Distrito el pleito seguido entre D. Adriano T. López Nussa, mayor de edad, domiciliado en San Juan y de profesión editor, como demandante, representado y defendido por el el Letrado Don Rafael López Landrón, y Doña María Luisa Valdespino y Agostini, menor de edad, domiciliada en Mayagüez y profesión doméstica, como demandada, en rebeldía primeramente, y representada después por el Letrado Don Tomás Bryan, sobre nulidad de matrimonio civil.

1. *Resultando*: que en 7 de julio de 1899 presentó don Adriano T. López Nussa demanda en juicio declarativo de mayor cuantía ante el el extinguido Juzgado del Distrito de San Francisco de esta ciudad contra su consorte doña María Luisa Valdespino solicitando la declaración de nulidad del matrimonio civil contraido por ambos en 28 de de Marzo de 1899, ante el Juez Municipal de Catedral, alegando como fundamentos de su pretensión que ambas consortes profesaban la religión católica y por tanto no podían contraer válidamente matrimonio civil, sino el canónico, conforme al sistema fundamental consignado en el artículo 42 del Código Civil, no derogado por la Orden General de 17 de Marzo de 1899, y á la interpretación auténtica establecida á este

the consent, but not to a purely accidental condition of the person of the other contracting party.

Costs.—Costs should be imposed upon the party whose claims are wholly rejected.

## STATEMENT OF THE CASE.

This is an action instituted in the District Court of San Juan for the annulment of a marriage by Adriano T. López Nussa, as plaintiff, who was represented in this Supreme Court by Attorney Jacinto Texidor, against María Luisa Valdespino, as defendant, she having failed to appear as a party in this court, and the Assistant Attorney General having appeared as the representative of the People of Porto Rico, as is usual in matters of this character, for reasons of public interest. Said case is pending before us on an appeal prosecuted by Adriano T. López Nussa from the judgment rendered by said court, which reads as follows:

"Judgment.—In the city of San Juan, Porto Rico, this fourteenth day of the month of March, 1903.

"An oral and public hearing was had in this district court in the suit instituted by Adriano T. López Nussa, who is of legal age, a resident of San Juan, and an editor by profession, as plaintiff, who is represented by Attorney Rafael López Landrón, against María Luisa Valdespino y Agostini, who is under legal age, a resident of Mayagüez, and engaged in domestic duties, as defendant, who was at first in default and was afterwards represented by Attorney Tomás Bryan for the annulment of a civil marriage.

"On July 7, 1899, Adriano T. López Nussa brought a complaint in a declaratory action of greater import in the former court of first instance of the San Francisco district of this city against his wife, María Luisa Valdespino, praying for a declaration of annulment of the civil marriage contracted by both parties on March 28, 1899, before the municipal judge of the Cathedral district, alleging as the ground of his claim that both spouses professed the Catholic religion, and could not, therefore, validly contract a civil marriage, but only a canonical marriage in conformity with the fundamental system established by article 42 of the Civil Code, which article was not repealed by the General Order of March 17, 1899, and the authentic

respecto por el Gobierno Español en la Real Orden de 27 de Febrero de 1875 y en la resolución de la Dirección General de Registros de 19 de Junio de 1880; que el Juez de Catedral no era competente para celebrar el matrimonio por no ser el del domicilio del esposo, que residía en la calle de San Francisco número 95, dentro de la demarcación del Juez de San Francisco, ni el de la esposa, residente en Mayagüez; siendo, por tanto, nulo el matrimonio celebrado por Juez incompetente, á tenor de los artículos 88, 89 y 101, número 4, del Código Civil, no derogado por la Sección 15 de la Orden General citada; que el Sr. López Nussa contrajo el matrimonio bajo la presión de amenazas que le hiciera el Comandante en Jefe del Departamento, Guy V. Henry, investido de autoridad absoluta y suprema, de reducirle á prisión y perjudicarle en sus intereses, constituyendo la intimidación producida en el ánimo del actor, por las amenazas aludidas, un nuevo motivo de nulidad á tenor del artículo 101, No. 2, del Código Civil; y finalmente, que el matrimonio fué contraido por la creencia del esposo de que la Srta. Valdespino se encontraba herida de súbito por un mal incurable y sujeta á una muerte próxima, sin posible remedio, creencia errónea á que le indujo una certificación médica que le presentó la demandada, en la cuál el Dr. Don Eliseo Font y Guillot afirmaba que dicha jóven padecía de un esteno-cardia, idiopática, con accesiones intercurrentes, hallándose en la fecha de dicha certificación ( 27 de Marzo) víspera del matrimonio bajo la influencia paraxistica de aquéllos accesos, siendo tal error un nuevo motivo que, viciando el consentimiento otorgado por el esposo para la celebración del acto matrimonial, debe producir la nulidad del mismo, conforme al citado artículo y número.

2. *Resultando* : que dado traslado de la demanda á la demandada y al Ministerio Fiscal con emplazamiento para personarse y contestarla, fué acusada la rebeldía á dicha demandada, dándose por contestada dicha demanda; y el Ministerio Fiscal evacuó el traslado sin ponerse ni allanarse á la demanda; pero reservándose el derecho de intervenir en las diligencias y actos sucesivos del pleito.

3. *Resultando* : que el actor propuso prueba documental de testigos y pericial, sin que la demandada propusiera prueba alguna.

4. *Resultando* : que se unieron á los autos como prueba docu-

interpretation placed thereon in this respect by the Spanish Government in the Royal Order of February 27, 1875, and by the decision of the General Direction of Registries of June 19, 1880; that the judge of the Cathedral district was not authorized to solemnize the marriage for the reason that his domicile was not that of the husband, who resided at No. 95 San Francisco street, within the district of the judge of the San Francisco district, nor that of his wife, who resides in Mayagüez, and that the marriage solemnized by said incompetent judge is void according to articles 88, 89, and subdivision 4 of article 101 of the Civil Code, which has not been repealed by section 15 of the General Order cited; that the said López Nussa contracted the marriage under the influence of threats made against him by General Guy V. Henry, the commander-in-chief of the department, who was invested with absolute and supreme authority, to cause him to be placed under arrest and to injure his interests, the intimidation produced in the mind of the plaintiff, by reason of the threats in question, constituting further ground for annulment under subdivision 2 of article 101 of the Civil Code; and, finally, that the marriage was contracted under the husband's belief that Miss Valdespino had been suddenly stricken with an incurable disease and was liable to imminent death without any possible remedy, such erroneous belief having been induced by a medical certificate presented to him by the defendant, in which Dr. Eliseo Font y Guillot affirmed that said young woman was suffering from idiopathic steno-cardia, accompanied by intermittent accessions, being on the date of said certificate (March 27), the eve of the marriage, under the morbid influence of said attacks, and such error is another reason why, the consent granted by the husband to the celebration of the marriage being vitiated, it should produce the annulment of the same in accordance with the article and subdivision cited.

''The complaint having been referred to the defendant and the office of the Attorney General under a citation to appear and answer the same, the said defendant was declared in default, the complaint being considered as answered; and the office of the Attorney General made report upon the reference neither opposing nor acquiescing in the complaint, but reserving the right to intervene in the proceedings and the successive steps taken in the action.

''The plaintiff offered documentary evidence, the testimony of witnesses and expert testimony, the defendant not having proposed any evidence whatever.

mental del actor, dos certificaciones del Alcalde de San Juan, de que en 16 de Agosto de 1900 Don Adriano T. López Nussa se encontraba empadronado en la calle de la Luna número 29 de esta Ciudad, no figurando como contribuyente; informe del Alcalde de Mayagüez acerca de que la demandada, en 21 de Agosto, residía en el barrio de Bateyes de Mayagüez, sin poseer bienes de fortuna, siendo su religión la católica; informe del Tesorero de Puerto Rico de no figurar el actor en la lista de los contribuyentes por territorial ó industria y comercio del Distrito Municipal de San Juan; certificación del Vicario de Mayagüez de que la demandada profesa la religión católica sin constar en los archivos parroquiales que hubiera abjurado de su religión; análoga certificación á la precedente referente al actor, expedida por el cura Párroco de la Iglesia de San Francisco, de San Juan; un informe de Don Manuel Romero Haxthausen relativo á haber asistido como intérprete á una conferencia habida entre el actor, demandada, Gobernador Militar Mr. Henry y Don Emilio Gómez de Mayagüez, acerca de reparación por el actor de la honra ofendida de la demandada pero sin recordar los términos de tal conferencia; el expediente formado con motivo del matrimonio efectuado por el Juez de Catedral de actor y demandada, en el cuál consta la certificación expedida por el facultativo Sr. Font y Guillot á que alude la demanda, cuya certificación fué acompañada á la solicitud que presentó el Juez Municipal, el Sr. López Nussa interesando que el matrimonio se celebrara en la morada de la entonces Srta. Valdespinó, por no poderse trasladar al Juzgado por su delicado estado de salud, haciendo constar además en la referida solicitud, el actor, que residía en la calle de San Francisco número 95; un acta notarial otorgada por el actor ante el Notario Don Santiago R. Palmer en San Juan el 29 de Marzo de 1899 bajo el número 150, en la cuál Don Saturnino Ramírez, Don José Casuela, Don Luis Villalón y Don José Hardoy Tizol relatan hechos tendentes á demostrar que después de efectuado el matrimonio del actor y la demandada, se separaron sin reunirse durante la noche, ausentándose al siguiente día la Sta. Valdespino para Mayagüez; y finalmente un documento en que el Presidente y Magistrado de la Corte Suprema de Justica, Don José S. Quiñones, y Don José C. Hernández y el Letrado Don Manuel F. Rossy, que han reconocido sus firmas, dictaminaron evacuando una consulta del General en Jefe del Departamento Hon. Guy V. Henry, que si bien existía el deber moral de parte del Sr. López Nussa de cumplir la promesa de matrimonio hecha á la Srta. Valdespino, según indicación del General, no existía medio legal de

"Attached to the record as documentary evidence of the plaintiff were two certificates of the alcalde of San Juan to the effect that on August 16, 1900, Mr. Adriano T. López Nussa was listed as a resident of No. 29 Luna street in this city, but did not appear as a taxpayer; a report of the alcalde of Mayagüez to the effect that on the 21st of August the defendant resided in *barrio* 'Beteyes' of Mayagüez, but possessed no property, her religion being Catholic; a report of the Treasurer of Porto Rico to the effect that the name of the plaintiff does not appear in the list of taxpayers on property, industry or commerce of the municipal district of San Juan; a certificate of the vicar of Mayagüez to the effect that the defendant professes the Catholic religion, and that it does not appear from the parochial archives that she has abjured her faith; a certificate similar to the foregoing relative to the plaintiff, issued by the parish priest of the San Francisco church of San Juan; a report of Mr. Manuel Romero Haxthausen to the effect that he was present as interpreter at a conference held between the plaintiff, the defendant, Military-Governor Henry, and Mr. Emilio Gómez, of Mayagüez, with reference to the making of reparation by the plaintiff for the offended honor of the defendant, but that he did not remember what was said at said conference; the record drawn up in connection with the marriage performed by the judge of the Cathedral district between the plaintiff and the defendant, in which appears the certificate issued by Dr. Font y Guillot, to which reference is made in the complaint, which certificate was accompanied by the petition presented to the municipal judge by Mr. López Nussa requesting that the marriage be celebrated at the home of the then Miss Valdespino, as she was unable to go to court by reason of the delicate condition of her health, the plaintiff also stating in said petition that he resided at No. 95 San Francisco street; a notarial instrument executed by the plaintiff in San Juan on March 29, 1899, before Notary Santiago E. Palmer, under No. 150, in which Messrs. Saturnino Ramírez, José Casuela, Luis Villalón, and José Hardoy Tizol relate facts tending to show that after the marriage of the plaintiff and the defendant had been effected they separated without joining each other during the night, Miss Valdespino having left on the following day for Mayagüez; and, finally, a document in which Chief Justice Quiñones and Associate Justice José C. Hernández of the Supreme Court, and Attorney Manuel F. Rossy, who acknowledged their signatures, expressed the opinion, in reply to a question submitted by General Guy V. Henry, commander-in-chief of the depart-

obligar á dicho Sr. á cumplir su promesa, pudiendo únicamente la perjudicada querellarse criminalmente contra el actor, dictámen que aparece aprobado por el Comandante en Jefe del Departamento ordenando se comunique al demandante.

5.  *Resultando*: que celebrado el juicio oral de esta declararon los testigos Don Santiago R. Palmer, manifestando haber asistido al otorgamiento del acta de que se ha hecho referencia, Don Francisco Goenaga manifestando que la esteno-cardia, ó sea la angina de pecho idiopática, no es mortal, deduciéndose de la certificación del Dr. Font. aludida, que la Srta. Valdespino, la noche de su matrimonio, no se hallaba en peligro de muerte, y Don José Casuela deponiendo acerca de los extremos objeto del acta ameritada y respecto á constarle, por referencia del actor, la coacción á que hace mérito la demanda, ejercida por el General Henry sobre el Sr. López Nussa.

6.  *Resultando*: que terminada la prueba, el Letrado Don Jacinto Texidor, en defensa del actor, alegó lo que á su derecho convino, dándose por terminado el juicio para sentencia, que fué votada en público, con citación de las partes.

7.  *Resultando*: que en la tramitación de este juicio se han observado las formalidades legales.

Siendo Ponente el Sr. Juez Asociado Don José Tous Soto.

1.  *Considerando*: en cuanto al motivo de nulidad fundado en la incompetencia del Juez del Distrito de Catedral que no está demostrado que el Sr. López Nussa residiera en la demarcación del Juez Municipal de San Francisco, pues la certificación del Alcalde de San Juan de residir el actor en la calle de la Luna número 29, se refiere á la fecha 16 de Agosto de 1900 en que fué expedida y nó á la fecha 27 de Marzo de 1899 en que se efectuó el matrimonio, la manifestación que en la solicitud para contraer matrimonio hace el actor de residir en la calle de San Francisco número 95, no está corroborada por ninguna prueba; y por otra parte, la Sección 15 de la Orden General de 17 de Marzo concede á los contrayentes el derecho de elegir el Juez que ha de unirlos en matrimonio, sin exigir como los artículos 86 y 88 del Código  Civil de 1899, que autorice el contrato matrimonial el Juez

ment, that although there was a moral obligation on the part of Mr. López Nussa to fulfill the promise of marriage made to Miss Valdespino, according to the suggestion of the General, no legal means existed of compelling said party to fulfill his promise, and the only thing that the injured party could do was to proceed criminally against the plaintiff; which report was approved by the commander-in-chief of the department and was ordered to be communicated to the plaintiff.

"On the oral trial of this case the witness Santiago R. Palmer testified that he was present at the execution of the instrument above referred to; Francisco Goenaga stated that the steno-cardia, or idiopathic angina pectoris, is not mortal, and that he gathered from the said certificate of Dr. Font that Miss Valdespino was not in danger of death on the night of the marriage; and José Casuela testified with reference to the matters embraced in said instrument, and to the effect that it was known to him, through statements made to him by the plaintiff, that General Henry employed coercion against López Nussa, as stated in the complaint.

"The taking of the evidence having been completed, Attorney Jacinto Texidor, on behalf of the plaintiff, alleged such matters as he thought proper in support of his claim, and the case was thereupon declared ready for judgment, which was voted upon in public after a citation of the parties.

"The legal formalities have been complied with in the conduct of this case.

"Judge José Tous Soto prepared the opinion of the court.

"With regard to the ground of annulment based upon the incompetency of the judge of the Cathedral district, it has not been shown that Mr. López Nussa resided in the territorial jurisdiction of the municipal judge of the San Francisco district, since the certificate of the alcalde of San Juan to the effect that the plaintiff resides at No. 29 Luna street relates to the 16th of August, 1900, when the same was issued, and not to the 27th of March, 1899, when the marriage was effected, and the statement made by the plaintiff in the petition to contract marriage, namely, that he resided at No. 95 San Francisco street, is not corroborated by any other evidence whatever. On the other hand, section 15 of the General Order of the 17th of March grants to the contracting parties the right to choose the judge who is to unite them in marriage, without requiring, as do articles 86 and 88 of the Civil Code of 1899, that the marriage compact be authorized

del domicilio de cualquiera de los cónyuges, bajo pena de nulidad, según el número 4, del artículo 101 de dicho Código Civil.

2. *Considerando* : en cuanto al motivo de nulidad fundado en profesar la religión católica los contrayentes y haber contraido sin embargo matrimonio civil reservado para los nó católicos, que el Código Civil de 1899 no prohibe á los católicos contraer matrimonio civil, sino que, pura y simplemente estableció dos formas de unión matrimonial, la canónica para los católicos, y la civil regulada por las disposiciones del Código para todos los que quisieran contraerlos, católicos ó prosélitos de otros cultos, sin que sean pertinentes las citas que hace el actor á este respecto de la Real Orden de 27 de Febrero de 1875 y Resolución de la Dirección General de los Registros de 19 de Junio de 1880, por no referirse al estado de derecho reconocido por el Código en materia de matrimonio ; y por otra parte, si existiere alguna duda de que los católicos pueden contraer matrimonio civil, por la forma empleada por el artículo 42 del Código Civil al establecer que el matrimonio canónico deberán contraerlo los que profesen la religión católica, tal duda desapareceria ante las prescripciones de los artículos 1 y 15 de la Orden General citada, el primero, al determinar que serán válidos y eficaces así los matrimonios civiles como los religiosos una vez inscritos, sin relacionar la validez del matrimonio civil con la religión de los contrayentes, y el segundo, al establecer el matrimonio civil para quienes quieran contraerlo ; prescripciones en un todo de acuerdo con los preceptos constitucionales en materia de libertad religiosa.

3. *Considerando* : en cuanto al motivo de nulidad basado en la coacción ejercida por el Comandante en Jefe del Departamento sobre el actor para compelerle contra su voluntad á unirse en matrimonio con la demandada, que la prueba documental aducida en demonstración de tal coacción, ó sea la carta de los Honorables Presidente y Magistrado del Tribunal Supremo, José S. Quiñones y Don José C. Hernández y Abogado Don Manuel F. Rossy endosada por el General Henry, prueba más bien que el Sr. Iopez Nussa quedó en libertad para contraer matrimonio ó nó con la demandada, sujeto no obstante á las responsabilidades criminales que pudieren exigirsele mediante querella ; y la demás prueba aducida, ó sea el informe del intérprete Sr. Romero, nada demuestra que haga relación á la coacción alegada, y la declaración del Sr. Casuela en cuanto á este extremo, es solamente

by the judge of the domicile of either of the spouses, under penalty of annulment, according to subdivision 4 of article 101 of said Civil Code.

''As to the ground of annulment set up that the contracting parties are adherents of the Catholic religion, and that they nevertheless entered into the civil marriage reserved for non-Catholics, the Civil Code of 1899 does not prohibit Catholics from contracting civil marriage, but simply established two forms of matrimonial union, namely, canonical marriage for Catholics and civil marriage governed by the provisions of the Code for all those desirous of entering into the same, Catholics or the devotees of other creeds, and the citations made by the plaintiff in this respect of the Royal Order of February 27, 1879, and the decision of the General Direction of Registries of June 19, 1880, are not pertinent, inasmuch as they do not refer to the state of law recognized by the Code upon the subject of marriage. On the other hand, if any doubt should exist with reference to the capacity of Catholics to contract civil marriage, in the manner specified in article 42 of the Civil Code providing that canonical marriage should be contracted by those who profess the Catholic religion, such doubts would disappear in view of the provisions of articles 1 and 15 of the general order cited, the former of which, in prescribing that both civil and religious marriages shall be valid when recorded, the validity of the civil marriage not being related to the religion of the contracting parties; and the latter in establishing civil marriage for such persons as may be desirous of contracting it. These provisions are in perfect harmony with constitutional precepts on the subject of religious liberty.

''Referring to the ground of annulment based upon the coercion practiced by the commander-in-chief of the department upon the plaintiff to compel him against his will to unite in marriage with the defendant, the documentary evidence adduced in support of such coercion, namely, the letter of the Chief Justice, José S. Quiñones, and Associate Justice José C. Hernández of the Supreme Court, and Attorney Manuel F. Rossy, indorsed by General Henry, prove rather that Mr. López Nussa was left at liberty to contract marriage with the defendant or not, subject, nevertheless, to the criminal liability which might be enforced against him by means of a complaint. The other evidence adduced, that is, the report of the interpreter Romero, proves nothing in relation to the alleged coercion, and the testimony of Mr. Casuelas on this point is based entirely upon state-

por referencia del actor Sr. Lopez Nussa, sin que le conste de propio conocimiento al testigo que el Sr. Lopez Nussa fuere amenazado por el Gobernador Militar.

4. *Considerando*: en cuanto al error en que se dice incurrió el Sr. Lopez Nussa de creer á su concorte en peligro de muerte, error á que le indujo la certificación de la enfermedad que padecía ésta, expedida por el Doctor Don Eliseo Font y Guillot y bajo la influencia de cuyo error contrajo matrimonio con la demandada, que dicha certificación no podía en modo alguno inducir al demandante al mencionado error, pues en ella nada se dice de peligro de muerte sino de imposibilidad de comparecer al Juzgado, y por otra parte, aun cuando tal error hubiera existido, no constituiría error que pudiera viciar el consentimiento y producir la nulidad del contrato matrimonial, de acuerdo con el artículo 101, número 2 del Código Civil de 1899, por no referirse al error en la persona que exige dicho artículo y número y sí á un estado puramente accidental en la persona del otro cónyuge.

5. *Considerando*: que la parte, cuyas pretensiones fueran desestimadas en absoluto, debe ser condenada en costas.

*Vistos* los artículos 101, números 2 y 4, 102, 103 No. 4, 86, 88, 42, del Código Civil, secciones 1, y 15 de la Orden General de 17 de Marzo de 1899, artículos 371 de la Ley de Enjuiciamiento Civil y 63 y 65 de la Orden General 118, serie de 1899.

*Fallamos*: que debemos declarar y declaramos sin lugar la demanda de nulidad de matrimonio civil promovida por Don Adriano T. Lopez Nussa contra Da María Luisa Valdespino, con las costas al actor.

Así, por esta nuestra sentencia, definitivamente juzgando, lo pronunciamos, mandamos y firmamos.—Juan Morera Martínez, Frank H. Richmond, José Tous Soto.''

*Resultando*: que notificada dicha sentencia al demandante, interpuso contra ella recurso de apelación que fué admitido, ordenándose que se remitieran los autos á este Tribunal, previa citación y emplazamiento de las partes por el término legal, y personados el apelante y el Hon. Assistant Attorney General, se dió al recurso la tramitación correspondiente, habiéndose señalado día para la vista, en la que las partes

ments made to him by the plaintiff López Nussa, it not being known to the witness of his own knowledge that Mr. López Nussa was threatened by the military governor.

"In respect to the error which Mr. López Nussa is alleged to have fallen into in believing that his wife was in danger of death, which error was superinduced by the certificate issued by Dr. Eliseo Font y Guillot as to the disease from which the latter was suffering, and that under the influence of such error he contracted marriage with the defendant, said certificate could not in any wise create such error in the mind of the plaintiff, since nothing is stated therein of the danger of death, but only of the impossibility of appearing in the court; and, on the other hand, even though such error did exist, it could not be such a one as would vitiate his consent so as to operate as an annulment of the matrimonial compact, under subdivision 2 of article 101 of the Civil Code of 1899, as it does not refer to such an error as to the person as is required by the said article and subdivision, but to a purely accidental condition of the person of the other spouse.

"Costs should be taxed against the party who loses his case on all points.

"In view of subdivisions 2 and 4 of article 101, article 102, and subdivision 4 of article 103, articles 86, 88, and 42 of the Civil Code, sections 1 and 15 of the General Order of March 17, 1899, article 371 of the Law of Civil Procedure, and articles 63 and 65 of General Order 118, series of 1899, we adjudge that the complaint for the annulment of the civil marriage presented by Adriano T. López Nussa against María Luisa Valdespino is and should be rejected, with costs against the plaintiff.

"Thus by this our judgment, finally adjudging, we pronounce, order and sign.—Juan Morera Martínez, Frank H. Richmond, José Tous Soto."

Notice of said judgment having been served upon the plaintiff, he prosecuted an appeal therefrom, which was allowed, and the record having been ordered to be transmitted to this court after citation of the parties for the legal period, and the appellant and the Assistant Attorney General having appeared, the appeal was conducted according to the proper procedure and a day set for the hearing, at which the parties

personadas, por medio de sus representantes, alegaron lo conducente á sus respectivas pretensiones.

Abogado del apelante: *Sr. Texidor.*

Abogado del Pueblo: *Sr. del Toro, Fiscal.*

La parte apelada no compareció.

El Juez Asociado, Sr. Sulzbacher, después de exponer los hechos anteriores, emitió la opinión del Tribunal.

*Aceptando* los fundamento de hecho y de derecho de la sentencia apelada.

*Vistas* las disposiciones legales que en la misma se citan.

*Fallamos* que debemos confirmar y confirmamos la sentencia que en catorce de Marzo de mil novecientos tres dictó la Corte de Distrito de San Juan; y devuelvánse los autos con la certificación correspondiente.

Jueces concurrentes: Sres. Presidente Quiñones y Asociados Hernández, Figueras y MacLeary.

---

Méndez *v.* La Administración de Puerto Rico et al.

Apelación procedente de la Corte de Distrito de San Juan.

No. 8.—Resuelto en Abril 25, 1904.

Demanda.—Personalidad de las Partes.—Reconocida por una parte la personalidad de la otra, no le es lícito volver sobre sus propios actos ó impugnar posteriormente esa misma personalidad.

Rentas Internas.—Administración de Consumos.—Las especies gravadas que hayan pagado impuestos al introducirse en una población para el consumo inmediato, no pueden ser gravadas de nuevo y toda administración de consumos, al cesar, deberá abonar á la que le suceda el importe de los derechos y recargos cobrados sobre las especies gravadas que deje existentes en los establecimientos públicos de venta.

Id.—Cambio de Tarifa.—La circunstancia de que haya un cambio en la tarifa, no es suficiente á justificar el cobro de la diferencia entre lo que pagaron las especies gravadas con arreglo á la tarifa vigente cuando fueron introducidas y lo que deberían pagar conforme á la nueva tarifa, pues una especie no puede ser gravada más de una vez, aún en el caso de experimentar transformaciones industriales.

who had appeared, through their attorneys, set up such matters as were deemed proper in support of their respective contentions.

*Mr. Texidor,* for appellant.

*Mr. del Toro, Fiscal,* for the People.

The respondent did not appear.

MR. JUSTICE SULZBACHER, after stating the foregoing facts, delivered the opinion of the court.

The findings of fact and the conclusions of law of the judgment appealed from are accepted.

In view of the legal provisions therein cited, we adjudge that we should affirm and do affirm the judgment rendered on March 14, 1903, by the District Court of San Juan, and order the record to be returned with the proper certificate.

Chief Justice Quiñones and Justices Hernández, Figueras and MacLeary concurred.